IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 JUN 28 A 10: 45
CLERK
SO. DIST. OF GA.

UNITED STATES OF AMERICA,

v.

CASE NO.: CR213-008

HERMAN ELLIS ARMSTRONG

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Herman Armstrong ("Defendant") has been charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Defendant filed a Motion to Suppress, to which the Government responded. The undersigned conducted an evidentiary hearing on this matter on June 18, 2013, at which Charessa Pierce, Brunswick Police Department Officer Carla Futch, former Brunswick Police Department Officer Sean Bolden, and Defendant testified.

## FINDINGS OF FACT

While portions of the testimony were contradictory, the credible testimony at the hearing establishes the following:[1]

Charessa Pierce ("Ms. Pierce") was in her parked car at Club Mayhem in Brunswick, Georgia, during the early morning hours of September 8, 2012. Ms. Pierce noticed a black male emerge from a crowd of people and go into the trunk of the car

---

[1] An evidentiary hearing was conducted on Defendant's Motion to Suppress so that the undersigned could make credibility determinations and develop the facts of this case. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

AO 72A
(Rev. 8/82)

parked next to her car. Ms. Pierce heard a "click", saw a gun, jumped out of her car, and called 911. Ms. Pierce gave the 911 dispatcher a description of the black male's clothing, which was a white t-shirt, a button-up plaid shirt, jeans, and a tag (or lanyard) around his neck. Ms. Pierce followed the black male around while she continued talking to the 911 dispatcher and telling the dispatcher where he was going. Ms. Pierce remained on the phone with the dispatcher until Officers Carla Futch and Sean Bolden made contact with the black male.

Officer Futch and her trainee, Officer Bolden, were dispatched to Club Mayhem based on a report of a fight at that location and then for shots being fired. The officers noted that there were approximately 150 to 200 people outside of Club Mayhem, and there were several black males wearing clothing matching the description the dispatcher provided. The dispatcher informed Officer Futch that she had just walked past the black male Ms. Pierce saw with the gun. Officers Futch and Bolden approached three (3) black males and asked them for identification. The black males were Defendant, his brother, and a third male, and Defendant was the only one of the three who was wearing clothing matching the given description. The officers, along with Sergeant Allen Carter, noticed that Defendant was wearing an ankle monitor on his right ankle. Defendant volunteered the information that his probation officer had given him a "weekend pass". Defendant stated that he had a Fourth Amendment waiver, yet he was asked for his consent for Officer Bolden to conduct a pat down search of his person. Defendant consented to a search and was handcuffed during the search. The search resulted in the recovery of a firearm after Officer Bolden shook Defendant's shorts.

2

Defendant asserts that his consent was not given freely and voluntarily. Defendant also asserts that officers lacked probable cause to search him, and they did not have a search warrant. Defendant further asserts that the evidence seized as a result of this search should be suppressed.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Investigative Detention

The Government avers that officers had a reasonable, articulable suspicion to justify the stop and frisk of Defendant. The Government alleges that an eyewitness reported that she was outside of a club and saw a black male, who turned out to be Defendant, get a firearm out of a trunk of a car and put it in the waistband of his shorts. The Government also alleges that the eyewitness gave the 911 dispatcher a description of the clothing Defendant was wearing, gave the Defendant's location, and stayed on the phone with the dispatcher until officers made contact with Defendant.[2]

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)). "In order to justify a [F]ourth [A]mendment seizure, the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime[.]" Id. "To determine the legality of an investigatory stop under the Fourth Amendment, [a

---

[2] Defendant's Motion to Suppress is based on whether his consent was valid, yet the Government's response concerns whether the stop and frisk which occurred was permissible.

3

court] first ascertain[s] whether the stop was justified at its inception." United States v. Griffin, 696 F.3d 1354, 1358 (11th Cir. 2012). A court then asks "whether the officer's actions were reasonably related in scope to the circumstances that justified the stop in the first place[ ]" under the "totality of the circumstances—the whole picture." Id.

The evidence before the Court reveals that Defendant was under "investigative detention" at the time he was searched. Despite Officer Futch's testimony to the contrary, Defendant was not free to go at this time and was under investigative detention. It must be determined whether this detention was reasonable.

Police officers had information that a fight had occurred and perhaps shots had been fired at Club Mayhem during the early morning hours of September 8, 2012, and that there were 150 to 200 people at this location. Police officers also had information that a black male wearing a button-up plaid shirt and jeans had a gun with him. Once officers arrived at the scene, Officer Futch informed the dispatcher that there were several black males on the scene wearing clothes matching that general description. The dispatcher then informed Officer Futch that the officers had just walked past the black male the eyewitness described. The two (2) officers then approached three (3) black males, and Defendant was the only one among these three who was wearing clothing matching the given description. Both officers testified that they wanted to frisk Defendant because of officer safety concerns. Based on the totality of the circumstances, police officers had a reasonable, articulable suspicion to detain Defendant and frisk him. Moreover, this encounter lasted approximately ten (10) minutes, which was not an unreasonable amount of time in these circumstances.

AO 72A
(Rev. 8/82)

United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (duration of detention once factor to consider whether the stop is a detention or full-scale arrest).

The undersigned notes defense counsel's assertion at the evidentiary hearing that Officer Bolden's shaking of Defendant's shorts exceeded the parameters of Terry. Once an officer has stopped an individual, he may conduct a pat down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened. United States v. White, 593 F.3d 1199, 1202 (11th Cir. 2010). Officer Bolden's testimony revealed that he did not feel a weapon on Defendant's person during the pat down search. However, Officer Bolden also testified that his pat down search was complicated by Defendant's colostomy bag and that he noticed Defendant was wearing at least two (2) pair of shorts under his jean shorts. Based on his training and experience, Officer Bolden knew people could conceal weapons in these extra items of clothing. Officer Bolden's training and experience, combined with Defendant's extra clothing, the knowledge that someone matching Defendant's description had a gun, the time of day, the amount of people at the scene, and the report of possible shots fired lead to the conclusion that, under these circumstances, Officer Bolden's shaking of Defendant's shorts to continue searching for a weapon was reasonable and did not exceed the scope of the Terry frisk. Terry, 392 U.S. at 29-30 (finding the scope of the officer's search for weapons reasonable under the circumstances because the officer confined his search to what was "minimally necessary" to discover whether suspect armed and did not invade the suspect's person beyond the out layers of his clothing).

II. Consent

AO 72A
(Rev. 8/82)

Defendant contends that the totality of the circumstances demonstrates that he did not consent freely and voluntarily to the search of his person. Defendant asserts that he was not free to leave at the time of the search and was under investigative detention. Defendant also asserts that he was told incorrectly that there was a Fourth Amendment waiver allowing police to search him. According to Defendant, he allowed officers to search him because he was led to believe he did not have the right to refuse a search.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. However, "police officers, possessing neither reasonable suspicion nor probable cause, may nonetheless search an individual without a warrant so long as they first obtain the voluntary consent of the individual in question." United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1974)). "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." United States v. Williams, 199 F. App'x 828, 832 (11th Cir. 2006). Factors relevant to the determination of voluntariness are: "the presence of coercive police procedure[;]" "the extent and level of [the suspect's] cooperation with police;" "his awareness of the right to refuse to consent to the search;" "his education and intelligence;" "his belief that no incriminating evidence will be found[;]" United States v. Molina-Garcia, 353 F. App'x

AO 72A
(Rev. 8/82)

277, 278 (11th Cir. 2009), and "the voluntariness of the defendant's custodial status[.]" United States v. Holmes, 270 F. App'x 767, 768 (11th Cir. 2008) (citing United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984)).

As noted above, Defendant was under investigative detention and was not free to leave the scene at the time he consented to the search of his person. In addition, there is no evidence that Defendant was aware that he could have refused the officer's request for consent to search his person. These factors weigh in favor of a finding that Defendant's consent to search was not given freely and voluntarily. However, the evidence before the Court is that, even though there were up to four (4) officers in Defendant's immediate vicinity, these officers had their weapons holstered. In addition, there is no evidence that any of the officers even had to raise his or her voice to Defendant. In fact, the evidence shows that Defendant was cooperative with police and was respectful. Though Defendant dropped out of school in the eighth grade due to criminal activity, he testified that he was able to obtain his General Equivalency Diploma ("GED") and training as a Certified Nursing Assistant while in state custody. Defendant also was able to testify sufficiently before the undersigned during the evidentiary hearing. Further, Defendant must have been aware that he had a gun on his person, which, considering his status as a recent parolee, he was not allowed to have. These factors weigh in favor of a finding that Defendant gave his consent to search his person freely and voluntarily. The totality of the circumstances warrants this finding. Additionally, both officers testified that, regardless of the validity of a Fourth Amendment waiver, Defendant (and the other two males with him) would have been subjected to a pat down search based on officer safety concerns.

7

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 28th day of June, 2013.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)